UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| AMERICAN CANADIAN ) | |
| INVESTMENTS, INC. ) | Case No. 04-12034-SSM |
| ) | Chapter 7 |
| Debtor ) | |

**MEMORANDUM OPINION**

This matter is before the court on the chapter 7 trustee's Final Report and Account with Compensation. A hearing was held on September 19, 2006. The chapter 7 trustee, H. Jason Gold, requests approval of $64,878.89 as compensation. The United States Trustee ("US Trustee") objected to the application, arguing that the trustee is only entitled to $12,631.48. The issue is whether a credit bid may be included in the calculation of the trustee's compensation under § 326(a), Bankruptcy Code, as "moneys disbursed or turned over in the case by the trustee." For the reasons stated below, the court determines that Congress did not intend to include a credit bid in the calculation of a trustee's compensation under § 326(a). Thus, the maximum compensation to which the Trustee is entitled is $12,631.48.

Background

American Canadian Investments, Inc. filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court on May 5, 2004. The case was converted to a chapter 7 on July 5, 2005, and H. Jason Gold was appointed as the chapter 7 trustee. The debtor's schedules reflect that its primary asset was three adjacent parcels of land in Baltimore, Maryland, described as

1

5810 Reistertown Road, 4200 Primrose Avenue, and the Northwest side of Primrose Avenue. The debtor valued the property at $1,800,000, subject to a deed of trust in favor of Pikes, Inc. ("Pikes") in the amount of $1,010,040 and tax liens in the amount of $142,007.

Following the conversion to chapter 7, the court granted the trustee's motion to approve the sale of the property to the mortgage holder, Pikes, for $1,300,000 "in cash and credit," with the cash portion, according to the sales contract, to be determined by Pikes, but to be in an amount sufficient to pay the administrative expenses of the case plus $10,000. The amount of cash actually received by the trustee from the sale was $121,298.[1] The trustee earned an additional $380.98 in interest. On August 25, 2006, the Trustee filed his Final Account and Report with Compensation requesting $64,878.89 in compensation based on what was asserted to be $1,387,629.65 in total disbursements.[2] As part of his application, the trustee included time records reflecting 170.3 hours of his own time, 50.6 hours of a legal assistant's time, and 4 hours of an associate's time expended in administration of the estate.[3] The amount the trustee actually has on hand for distribution (after payment of $39,000 already made to the sales agent) is $83,785.72, which he proposes to distribute as follows:

---

[1] Following the sale, Pikes filed an amended proof of claim asserting an unsecured deficiency claim in the amount of $406,273.

[2] The account also included provision for payment of $12,795.78 in compensation and expenses to Joel S. Aronson, Esquire, as attorney for the trustee, and $2,159.75 in compensation to Thompson Greenspun & Co., Inc., as accountant for the trustee. Having reviewed the applications for compensation submitted by those professionals, the court will approve the compensation to the accountant in the amount requested and to the attorney in the slightly reduced amount of $11,376.94 in fees and $427.95 in expenses.

[3] At the requested hourly rates of $350.00 for the trustee, $75.00 for the legal assistant, and $200.00 for the associate, the trustee's compensation, if calculated on an hourly fee basis, would come to $64,200.00.

2

|  | To Be Paid | Balance |
|---|---|---|
| Trustee's compensation | $64,878.89 | $18,906.83 |
| Trustee's expenses | $68.40 | $18,838.43 |
| Attorney for trustee | $12,795.78 | $6,042.65 |
| Accountant for trustee | $2,195.75 | $3,846.90 |
| Priority tax claims (15.7%) | $3,846.90[4] | 0.00 |

The $1,387,629.65 in disbursements upon which the trustee's compensation request is based includes the $1,200,000 credit allowed to Pikes against the sales price of the property.[5] The US Trustee objected to the trustee's requested compensation, arguing that the $1,200,000 credit bid should not have been included in the calculation of the trustee's compensation under § 326(a), Bankruptcy Code, because it did not qualify as money disbursed by the trustee. An objection was also filed by the law firm of Tyler, Bartl, Gorman & Ramsdell, P.L.C., which has an approved claim for professional fees as counsel for the debtor in possession in the amount of $19,863.95, seeking payment of its claim.[6]

---

[4] As will be noted, the amount available for unsecured claims is considerably less than even the meager $10,000 represented in the motion to sell.

[5] On the settlement statement, the "credit to buyer for previous lien" is shown as $1,200,000. However, since the trustee actually received $121,298 in cash, the true benefit to Pikes from its credit bid was only $1,178,702.

[6] Although chapter 11 administrative expenses are subordinate to the administrative expenses of a superceding chapter 7 case, § 726(b), Bankruptcy Code, they would still be entitled to payment before the priority tax claims. Neither the trustee nor the US Trustee takes issue with the Tyler, Bartl objection, and accordingly any final distribution will have to provide for payment of the chapter 11 administrative claim before payment of priority tax claims.

Discussion

Compensation of chapter 7 trustees is governed by §§ 326 and 330, Bankruptcy Code. Section 330 permits a court to award a trustee "reasonable compensation" and reimbursement for actual, necessary expenses based on the "nature, the extent, and the value of [the] services" and a consideration of five statutory factors.[7]  § 330(a)(3), Bankruptcy Code.  That compensation, however, is capped by § 326, which provides in relevant part as follows:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon *all moneys disbursed or turned over in the case by the trustee* to parties in interest, excluding the debtor, but including holders of secured claims.

§ 326(a), Bankruptcy Code (emphasis added).

The US Trustee's position is that the maximum compensation to which the trustee is entitled is $12,631.48 based on total actual disbursements of $187,628.55.[8]  The trustee—relying primarily on a nearly century-old decision of the Fourth Circuit construing an analogous provision in the former Bankruptcy Act of 1898— rejoins that the credit bid should be included in the calculation because, regardless of whether Pikes had paid the $1,200,000 in cash or by

---

[7]  This case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) and is therefore governed by the law as it existed prior to the amendments made by the Act.  In particular, the amendments to § 330 remove the reference to compensation for a chapter 7 trustee being based on the nature, extent, and value of the trustee's services and instead require that the court "treat such compensation as a commission, based on section 326."  § 330(a)(7), Bankruptcy Code.

[8] This figure includes $64,000 in rent payments received by the trustee from the tenant but paid over to Pikes as adequate protection payments.

credit bid, the end result is the same—there was an exchange of value. The trustee is therefore asking this court to adopt a constructive disbursement theory.

Whether a credit bid should be included in the § 326(a) calculation turns on the scope of the word "moneys" in the phrase "all moneys disbursed." Statutory interpretation begins with the plain language meaning of the statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). However, where the plain meaning of a statute is ambiguous, the court must look to the legislative history to determine Congress's intent. *United States v. Pub. Util. Comm'n of Cal.*, 345 U.S. 295, 315 (1953).

In literal terms, it is difficult to see how the term "moneys disbursed" could be construed as anything other than the writing of a check to the creditor. At least one court, however, has found the term "moneys" as used in § 326(a) to be ambiguous given the various sophisticated ways monetary value is transferred in our modern economy. *See Staiano v. Cain (In re Lan Assocs. XI, L.P.*, 192 F.3d 109, 116 (3rd Cir. 1999). To the extent the term is actually ambiguous, it is appropriate to look to the legislative history in interpreting § 326(a). That history rather clearly reflects that Congress intended for the term "moneys" to mean actual money, not property or any other type of constructive disbursement. Specifically, in addressing § 326(a), the legislative history explains:

> [T]he base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. *It does not cover cases in which the trustee simply turns over the property to the secured creditor*, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

H.R. Rep. No. 95-595, at 327 (1977), *as reprinted in* U.S.C.C.A.N. 5963, 6283-84 (emphasis added).  Thus, it is quite clear that Congress intended for "moneys disbursed" to mean actual money, not property, turned over by the trustee to secured creditors.

Although only a few courts have addressed this issue, the majority of them have reached the same conclusion and have rejected the constructive disbursement theory under which "moneys disbursed" includes property turned over by the trustee.  In *Lan Associates*, the Third Circuit persuasively addressed this issue on facts very similar to those before this court.  In that case, the chapter 7 trustee sold a piece of property, with an appraised fair market value of $9,727,000, to the mortgagee via a credit bid for the liquidation price of $7,781,200.  *Lan Associates*, 129 F.3d at 111-12.  The trustee then sought compensation and included the $7,781,200 credit bid in his § 326(a) calculation, which the bankruptcy court approved.  *Id.* at 112-13.  The US Trustee appealed, and the United States District Court for the District of New Jersey found that the plain meaning of "moneys disbursed" did not include the value of a credit bid.  *Id.* at 114.  The trustee then appealed to the Third Circuit, arguing that the encumbered property was actually sold to the mortgagee, resulting in an exchange of value, and was not simply abandoned or turned over.  *Id.* at 114-15.  The trustee urged that distinguishing a credit bid sale from a sale free and clear of liens simply elevated form over substance.  *Id.* at 115.

The Third Circuit rejected the trustee's argument and began its analysis by looking at the legislative history of § 326(a).  The Court noted that, "[i]n this day and age when we exchange by a keystroke or series of keystrokes what we used to handle only in cash, we do not think that the term 'moneys' is so clear . . . ."  *Id.* at 116.  After examining the legislative history, the Court concluded that Congress intended to distinguish between money and property in § 326(a).  *Id.* at

6

117. According to the Third Circuit, the sale of property by the trustee through a credit bid was no different from a situation where the trustee turns over or abandons the property to the secured creditor. Although the trustee may have participated in negotiating the sale, the bottom line is that the trustee did not disburse anything to the secured creditor except the property. *Id.* "Whether the secured creditor purchases the property through a credit bid or whether the property is turned over or abandoned to it by the trustee, the end result is the same—in either case, the secured creditor receives the *property* in satisfaction of its secured claim." *Id.* (emphasis in original). Recognizing that Congress, if it wanted to include property in the calculation of a trustee's compensation under § 326(a), knew how to do so, the Third Circuit held that Congress did not intend for a credit bid to be included in the § 326(a) calculation. *Id.* at 117-18.

      In rejecting the trustee's constructive disbursement theory, the Third Circuit noted that it was following the Fifth Circuit decision in *Pritchard v. United States Trustee (In re England)*, 153 F.3d 232 (5th Cir. 1998), as well as the majority of district and bankruptcy courts that have considered the issue. *Id.* at 118-19. The Court explained that the constructive disbursement theory conflicted with the interpretation of "'moneys' in the narrow sense, i.e., in the sense of 'sums of money,' 'something generally accepted as a medium of exchange,' or 'assets or compensation in the form of or readily convertible to cash.'" *Id.* at 118. The Court found further support for its position in the consistent holding of bankruptcy courts that trustees should not ordinarily sell fully-encumbered assets. *Id.* at 119-120. "It follows," the Court stated, "that a trustee who expends time and effort administering fully encumbered assets should not receive compensation *except to the extent that his actions provide an actual benefit to the estate*." *Id.* at

7

120 (emphasis added). That benefit is properly measured in terms of money actually disbursed to creditors. *Id.* at 120-21.

This court adopts the Third Circuit's reasoning in *Lan Associates*. In the present case, the trustee sold the property to Pikes for $1,300,000, of which $1,178,701 represented a credit bid. As in *Lan Associates*, Pikes received the property in satisfaction of its secured claim against the estate. The trustee's act of conveying the property to Pikes—at least to the extent of the credit bid—secured no benefit to the estate. The only benefit realized by the estate from the sale arose from the $121,298 cash paid by Pikes.

While this court agrees with the Third Circuit's interpretation of the legislative history, there are other cases that reach the same result without relying on legislative history. Those courts have found that § 326(a) is not ambiguous and did not look beyond the plain language of "moneys disbursed," yet still found that the phrase means actual money, not property or other value transferred. See, *e.g., Pritchard v. United States Trustee (In re England)*, 153 F.3d 232, 235-37 (5th Cir. 1998) (rejecting the constructive disbursement theory and holding that the plain language of § 326(a) indicates that the trustee's compensation is based solely on money disbursed and not on property disbursed); *In re The Landing, Inc.*, 142 B.R. 169 (Bankr. N.D. Ohio 1992) (following prior decisions giving § 326(a) a narrow meaning and holding that only the cash actually disbursed by the trustee could provide the basis for his compensation under § 326(a)); *In re Barnett*, 133 B.R. 487, 489 (Bankr. N.D. Iowa 1991) (explaining that Congress chose to use the more limited term "money" rather than "property" or "value" and money means coins or paper currency).

Only one case, on facts similar to those presented here, has included a constructive disbursement in calculating a trustee's compensation under § 326(a). *In re Stanley*, 120 B.R. 409 (Bankr. E.D. Tex. 1990). In *Stanley*, the United States Bankruptcy Court for the Eastern District of Texas considered whether $13,115.43 in lien assumptions should be included in the § 326(a) calculation as a constructive disbursement. *Id.* at 410. Stating that it was motivated primarily by the consideration that a strict reading of § 326(a) may leave a trustee without compensation despite the great efforts the trustee may have exerted to dispose of property of the estate, the court held that a strict reading of § 326(a) is only appropriate where the trustee tries to sell property that is fully encumbered or has only slight equity. *Id.* at 413. In all other cases, the court stated, a strict reading of § 326(a) must be balanced against the policy considerations of providing a trustee with fair and reasonable compensation. *Id.*

*Stanley* is neither binding on this court, nor persuasive. Even if this court were inclined to adopt *Stanley*'s two-pronged approach to § 326(a), the property sold by the trustee here was substantially encumbered and had little, if any, real equity. But even if the situation had been otherwise, this court can see no principled way to construe § 326(a) one way when the property is fully or largely encumbered and another way if the property has substantial equity. The statutory language can only have one meaning, one that applies in all situations. While the motives of the *Stanley* court were well-intentioned, the fact remains that the opinion simply ignores Congressional intent in order to provide the trustee with what the court considered fair and reasonable compensation.

In addition to *Stanley*, the trustee relies on a pre-World War I opinion by the Fourth Circuit construing an analogous provision in the Bankruptcy Code of 1898. *Varney v. Harlow*

9

*(In re Columbia Cotton Oil & Provision Corp.)*, 210 F. 824 (4th Cir. 1913). *Columbia Cotton* did not involve trustee compensation but rather a separate provision for compensation of the bankruptcy referee. § 40(a), Bankruptcy Act of 1898.[9] The statute, which had been amended some ten years earlier, allowed the referee a commission of one percent "on all moneys disbursed to creditors by the trustee." *Columbia Cotton*, 210 F. at 827. In that case, the bondholders of a bankrupt corporation whose bonds were secured by the company's property bought the property from the trustee for $90,000, which was $10,000 less than the face value of their lien claim. *Id.* at 825. The only cash the bondholders actually paid to the trustee was $2,044 to cover the costs and expenses of the sale. *Id.* The trustee then "indorse[d] on the bonds as a payment thereon the difference between the purchase price and the cash paid to him for costs and expenses, or $87,955." *Id.* The district judge, on his own motion, declined to allow the referee a commission on that amount because he did not think that any money had been disbursed to the bondholders by the trustee. *Id.* at 826. The referee filed a petition to superintend and revise, and the Fourth Circuit reversed.

---

[9] At the time of the opinion, § 40(a) read as follows:

> a. Referees shall receive as full compensation for their services, payable after they are rendered, a fee of fifteen dollars deposited with the clerk at the time the petition is filed in each case . . . and twenty-five cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them one per centum commissions *on all moneys disbursed to creditors by the trustee*, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition.

Act of February 5, 1903, Pub. L. No. 62, § 9, 32 Stat. 797 (1903) (emphasis added).

As a preliminary matter, the Court noted that payment of the referee's commission would be borne by the bondholders for whose benefit the property was sold, and they were not objecting to the payment. *Id.* at 826. On the merits, the Court reasoned that the referee's compensation should not differ simply because the parties executed a more convenient transaction through a credit bid rather than requiring the bondholders to pay money to the trustee who would then turn around and pay the money back to them. *Id.* at 827. As the Court explained,

> It would hardly seem that the referee's rights should be different merely because for the convenience of the bondholders they were excused from paying in $90,000 and getting $87,955 back. The payment of the latter sum was as effectually made to them by crediting it on their bonds as it could have been in any other form. It does not seem wise to make substantial rights depend on such unessential differences.

*Id.*

The equitable considerations articulated in *Columbia Cotton* are indeed weighty. The question is whether they can be squared with the language of the statute. While the words being construed in *Columbia Cotton*—"all moneys disbursed"—are the same words used in § 326, the specific statutory provision in that case—indeed, the very notion of paying bankruptcy referees (now bankruptcy judges) from the estate being administered—has no direct counterpart in the current Bankruptcy Code. Although the statutory reference to "moneys disbursed . . . *by the trustee*" may be seen as implicating the calculation of the trustee's commission as well, the fact remains that § 326, though it has its roots in the Bankruptcy Act of 1898,[10] is nevertheless an

---

[10] Trustee compensation under the Act was governed by § 48(a), which, at the time *Columbia Cotton* was decided, read in pertinent part as follows:

(continued...)

11

independent statute that was enacted 65 years after the *Columbia Cotton* decision. The present statute, moreover, is accompanied by legislative history indicating that Congress intended to include only disbursements of *actual money* in calculating a trustee's compensation. H.R. Rep. No. 95-595, at 327 (1977), *as reprinted in* U.S.C.C.A.N. 5963, 6283-84.

      Furthermore, Congress had the opportunity to change the language of § 326(a) to include property and other value as "moneys disbursed" in the calculation of the trustee's compensation, but chose not to. *In re New England Fish Co.*, 34 B.R. 899, 901 (Bankr. W.D. Wash. 1983) (noting that when Congress adopted the Bankruptcy Code and chose to keep the same basic language from the Bankruptcy Act, it presumably knew of the split of authority under prior case law and easily could have included the value of properties turned over, assumed claims, and compromised claims in the § 326(a) calculation, but did not); *In re Barnett*, 133 B.R. 487, 489 (Bankr. N.D. Iowa 1991) (explaining that if Congress wanted the term "moneys" as used in § 326(a) to include anything other than actual money disbursed, it could have included the words "property" or "value."). For that reason, the court cannot agree with the trustee that *Columbia Cotton* controls the interpretation of § 326(a). Although the court recognizes that not including

---

[10] (...continued)
    a. Trustees shall receive for their services, payable after they are rendered, a fee of five dollars deposited with the clerk at the time the petition is filed in each case . . . and such commissions *on all moneys disbursed or turned over to any person, including lien holders,* by them, as may be allowed by the courts, not to exceed six per centum on the first five hundred dollars or less, four per centum on moneys in excess of five hundred dollars and less than fifteen hundred dollars, two per centum on moneys in excess of fifteen hundred dollars and less than ten thousand dollars, and one per centum on moneys in excess of ten thousand dollars.

Act of June 25, 1910, Pub. L. No. 294, § 9, 36 Stat. 838 (1910) (emphasis added).

the credit bid in the § 326(a) calculation may reach an inequitable result in those cases where the trustee has expended considerable effort in obtaining a distribution for unsecured creditors,[11] the court cannot ignore the intent of Congress simply to reach a preferred result in a particular case. *Lan Associates*, 192 F.3d at 120-21; *Pritchard*, 153 F.3d at 237; *In re The Landing, Inc.*, 142 B.R. at 172; *In re Barnett*, 133 B.R. at 489.

Accordingly, the Court concludes that Pikes's credit bid cannot be included in the calculation of the Trustee's compensation under § 326(a). The trustee's compensation must be calculated based on actual money disbursed—here, $187,628.55. Therefore, the trustee's compensation shall be reduced from $64,878.89 to $12,631.48. A separate order will be entered consistent with this opinion.

Date: _____           _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

---

[11] In any event, such equitable considerations would hardly apply to the present case, since once the Tyler, Bartl chapter 11 administrative claim is taken into account, there would be *no* distribution to unsecured creditors, and the sole result of the trustee's efforts would have been the payment of administrative expenses—an unfortunate example of a bankruptcy case being administered only for the benefit of the professionals.

Copies to:

H. Jason Gold, Esquire
Wiley Rein & Fielding LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA  22101
Chapter 7 trustee

Joel S. Aronson, Esquire
Ridberg Sherbill & Aronson LLP
3 Bethesda Metro Center
Suite 650
Bethesda, MD 20814
Counsel for trustee

Martha L. Davis, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314

Thomas P. Gorman, Esquire
Tyler, Bartl, Gorman & Ramsdell, P.L.C.
700 S. Washington St., Suite 216
Alexandria, VA  22314
Counsel for Tyler, Bartl, Gorman & Ramsdell, P.L.C.